UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAUN SCOTT and DELANIA SCOTT,

        Plaintiffs,                     Case No. 2:16-cv-13342

v.                                     HONORABLE STEPHEN J. MURPHY, III

WELLS FARGO BANK, N.A., and WELLS
FARGO HOME MORTGAGE, INC.,

        Defendants.
_____/

**<u>OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [6]</u>**

Plaintiffs Shaun and Delania Scott sued Defendants Wells Fargo Bank, N.A.[1] and Wells Fargo Home Mortgage, Inc. (collectively, "Wells Fargo") for breach of contract, fraud, innocent misrepresentation, silent fraud, slander of title, and reformation of the parties' Loan Modification Agreement ("LMA"). Before the Court is Wells Fargo's motion to dismiss or, in the alternative, for summary judgment. For the following reasons, the Court will grant the motion and dismiss all claims.

**BACKGROUND**

In 2004, Plaintiffs Shaun and Delania Scott obtained three mortgages to build a house at 5521 Oak Grove Road, Howell, Michigan ("Oak Grove"). The Construction Loan Company, Inc. provided the first mortgage, and it was later assigned to Wells Fargo. TCF Bank provided the second and third mortgages. ECF 2, PgID 69. In 2009, Plaintiffs suffered financial difficulties, filed for bankruptcy, and obtained a personal discharge of the debts secured by the three mortgages. They then moved to North Carolina to seek better job prospects. *Id.* Plaintiffs went into default on their mortgages, and Oak Grove was

---

[1] Although the complaint names "Wells Fargo, N.A.," the party is appropriately styled as "Wells Fargo Bank, N.A." *See* ECF 6, PgID 109.

foreclosed and sold at a sheriff's sale to Wells Fargo on January 6, 2010. *Id.* After the completion of the sale, a one-year redemption period began pursuant to Mich. Comp. Laws § 600.3240—during which the Plaintiffs had the ability to redeem the property.

In the months after the sheriff's sale, Plaintiffs' financial status improved and they returned to Michigan. *Id.* They contacted Trott and Trott, P.C. (foreclosure counsel for Wells Fargo) and spoke with "Jay" about the their loss mitigation options. *Id.* Between April 2010 and March 2011, Plaintiffs sent a series of "Hardship Letters" to Trott and Trott requesting their "monthly payment be lowered" and "a loan modification that involves payments of no more than $1000 per month." ECF 4, PgID 82–87. On January 6, 2011, the statutory redemption period ended without action by the Plaintiffs; title to Oak Grove thus vested in Wells Fargo, and all existing liens on the property extinguished in accordance with Mich. Comp. Laws § 600.3236. Meanwhile, the parties continued with the loan modification, and on July 29, 2011, Wells Fargo sent Plaintiffs a letter confirming the modification of the Wells Fargo mortgage and providing a Loan Modification Agreement ("LMA"). *Id.* at 89–102.

The LMA "amend[ed] and supplement[ed] that certain Note and Mortgage or Deed of Trust dated 09/16/2004." *Id.* at 99. It explained that Plaintiffs' bankruptcy had discharged the debt resulting from the original mortgage from Wells Fargo, but that Wells Fargo's security interest and lien were still valid and enforceable. *Id.* It also confirmed that Plaintiffs were entering into the agreement freely, "for the sole purpose of retaining the Property" and that Plaintiff had "no personal obligation to repay the debt . . . discharged in bankruptcy." *Id.* The agreement allowed Plaintiffs to retain the property in exchange for Plaintiffs paying Wells Fargo the debt secured by the Oak Grove Property, "in the manner specified herein." *Id.* at 100.

2

On October 31, 2011, Lindsay Andersen of Wells Fargo executed an "Affidavit to Expunge Sheriff's Deed on Mortgage Sale." ECF 4, PgID 104–05. The affidavit "set aside the sheriff's sale," that had the effect of reinstating the Wells Fargo lien and two TCF Bank mortgage liens. *Id.* In 2016, Plaintiffs tried to refinance their mortgage with Wells Fargo and "discovered the TCF Bank mortgages on the title report." ECF 2, PgID 72. Plaintiff's claim to have been unaware that the TCF liens would continue to encumber the property after the parties executed the LMA because Wells Fargo "represented to [them] that its mortgage lien against Oak Grove was the only encumbrance on the property," and "that the TCF mortgages would not encumber Oak Grove after the Modification Agreement was executed." *Id.* at 70.

Plaintiffs filed suit in a Michigan state court on September 2, 2016, and Wells Fargo removed to the Court two weeks later. Plaintiffs filed an amended complaint and the instant motion followed.

## LEGAL STANDARD

Wells Fargo moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. As a preliminary matter, the Court must determine under which rule to construe the motion.

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. The Court may only grant a 12(b)(6) motion if the allegations are not "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). When evaluating a claim under Rule 12(b)(6), the Court views

3

the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pled factual assertions, and draws every reasonable inference in favor of the non-moving party. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Still, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the element of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). If "a cause of action fails as a matter of law" then the Court may dismiss the case, "regardless of whether the plaintiff's factual allegations are true or not." *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

The Court will address Wells Fargo's motion under Rule 12(b)(6) rather than Rule 56. A decision on a Rule 12(b)(6) motion must "ordinarily be undertaken without resort to matters outside the pleadings." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). The Court may, however, "consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.* Here, Plaintiffs have referred to and attached multiple exhibits to their Amended Complaint which provide a sufficient basis for a ruling on Wells Fargo's motion under Rule 12(b)(6).

## DISCUSSION

Wells Fargo claims that Plaintiffs have not stated a cause of action for breach of contract, failed to plead their fraud-related counts with sufficient particularity, and failed to plead a sufficient factual basis for all other counts. The Court will address each of Plaintiffs' counts in turn.

4

I.   Count 1 – Breach of Contract

Plaintiffs allege Wells Fargo breached a contractual obligation to "convey Oak Grove to Plaintiffs with only Wells Fargo's mortgage encumbering the property by filing the Affidavit to Expunge." ECF 2, PgID 72. They allege the parties had no discussion about setting aside the sheriff's sale or the affect it would have on the TCF mortgages, and that they "would not have agreed to any agreement that would have revived the Wells Fargo and TCF Bank mortgages." *Id.* Wells Fargo responds they had no contractual duty to convey the property unencumbered by the TCF mortgages. ECF 6, PgID 124.

The Court's first task is to determine Wells Fargo's obligations under the contract. "Where a contract is to be construed by its terms alone, it is the duty of the court to interpret it; but where its meaning is obscure and its construction depends upon other and extrinsic facts in connection with what is written, the question of interpretation should be submitted to the jury[.]" *Klapp v. United Ins. Grp. Agency, Inc.*, 468 Mich. 459, 469 (2003) (quoting *O'Connor v. March Automatic Irrigation Co.*, 242 Mich. 204, 210 (1928)). "[C]ourts must also give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Id.* at 468.

Here, the LMA may be interpreted by its terms alone. Looking at the LMA's "language according to its plain and ordinary meaning," *St. Paul Fire Ins. Co. v. Ingall*, 228 Mich. App. 101, 107 (1998), the Court finds no promise by Wells Fargo to encumber the Oak Grove property with only the Wells Fargo mortgage. Plaintiffs assert that the LMA "unambiguously . . . relates to one note and one mortgage security instrument," therefore, there must be "one encumbrance on Oak Grove - Defendants' mortgage." ECF 7, PgID 219. While the former assertion may be true, the latter does not follow. The LMA purports to "amend[] and

5

supplement[] that certain Note and Mortgage or Deed of Trust dated 09/16/2004." ECF 4-6, PgID 99. And it did. In the process of modifying the loan, however, it was necessary to expunge the sheriff's sale of the property to reinstate the mortgage. That action also had the effect of reinstating the TCF mortgages. Therefore, not only is there no express promise not to encumber Oak Grove with the TCF mortgages, but Plaintiffs' proposed interpretation would fail to "give effect to every word, phrase, and clause in [the] contract." *Klapp*, 468 Mich. at 468. Specifically, the parties could not "amend[] and supplement[] that certain Note and Mortgage or Deed of Trust dated 09/16/2004" without expunging the sheriff's sale, ECF 4-6, PgID 99.

Because Plaintiffs have not pled facts to establish a contractual obligation to convey Oak Grove without the TCF mortgage encumbrances, their breach of contract claim fails.

II.     Count 2 – Fraud

On the claim of fraud, Plaintiffs argue that their compliant meets the heightened pleading requirements and point to the LMA itself as evidence of fraud. Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).[2] Sufficient particularity requires that the pleading include "(1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury." *Wall v. Mich. Rental*, 852 F.3d 492, 496 (6th Cir. 2017) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007))

---

[1] Although the action arises under state law, the federal pleading standard applies. *See Minger v. Green*, 239 F.3d 793, 800 (6th Cir. 2001) ("While state law governs the burden of proving fraud at trial in a diversity action in federal court, the procedure for pleading fraud in all diversity suits in federal court is governed by the special pleading requirements of Fed.R.Civ.P. 9(b).").

6

(internal quotation marks omitted). The Plaintiffs must also identify the speaker who made the fraudulent statement. *See Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008).

Here, Defendant argues Plaintiff has failed to "specify the speaker or time, place or manner in which the alleged misrepresentations were made." ECF 6, PgID 125. In response, Plaintiffs point to two sources of alleged fraudulent misrepresentations: (1) representations allegedly made by Wells Fargo during negotiations, and (2) the inherently fraudulent terms of the LMA itself.

As to the alleged representations made by Wells Fargo, the Complaint fails to plead the Plaintiffs' fraud claim with sufficient particularity. Paragraphs 24–27 and 48–49 of the Complaint state the alleged representations made to Plaintiffs, but do not identify when the alleged fraud took place (time), where the fraudulent statements occurred and the means through which they occured, e.g., telephone, letter, face-to-face conversation (place), or the identity of the individuals who made such representations. Without that information, Plaintiffs' allegations are conclusory and do not pass the threshold requirement to provide Wells Fargo with sufficient notice in order to allow them to give an informed answer to the fraud claim. *See Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993).

Second, the terms of the LMA do not provide a basis for Plaintiffs' fraud claim. The LMA may provide the information necessary to meet Rule 9(b)'s heightened particularity standard, but the claim fails for a different reason. "Michigan case law expressly provides that an action in tort may not be maintained where a contractual agreement exists, unless a duty, separate and distinct from the contractual obligation, is established." *Sherman v. Sea Ray Boats, Inc.*, 251 Mich. App. 41, 52 (2002). Asserting that a fraudulent statement was made in the terms of the contract conflates fraud with breach of contract. But the

"danger of allowing contract law to 'drown in a sea of tort' exists only where fraud and breach of contract claims are factually indistinguishable." *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 209 Mich. App. 365, 375 (1995) (quoting *Neibarger v. Universal Coops., Inc.*, 439 Mich. 512, 528 (1992)).

Here, the claims are "factually indistinguishable" because Plaintiffs allege the fraudulent statements are the very terms of the contract. *See* ECF 7, PgID 220. In support of their breach of contract claim, Plaintiff argue that LMA relates to "one note and one mortgage security instrument," and is "devoid of language relative to recision of the prior foreclosure of Oak Grove." *Id.* at 219. Almost identically, in support of their fraud claim, Plaintiffs argue they relied on the "plain language of the LMA which expressly refers to one note and one security instrument," and point out "[t]he LMA does not mention rescission of the prior foreclosure of Oak Grove." *Id.* at 220.

Accordingly, Plaintiffs have not pled a claim for fraud based on a duty separate and distinct from the LMA. The Court will dismiss the fraud claim.

III. <u>Count 3 – Innocent Misrepresentation</u>

Plaintiffs allege Wells Fargo innocently misrepresented that the Wells Fargo mortgage would be the only encumbrance on the Oak Grove property, and that they were harmed as a result by their inability to refinance the property. *See* ECF 2, PgID 74–75. An innocent misrepresentation claim must also meet the heightened pleading standards of Rule 9(b). *See Smith v. Bank of America Corp.*, 485 F. App'x 749, 752–53 (6th Cir. 2012).

Plaintiffs' claim for innocent misrepresentation provides no more detail than the claim for intentional fraud. The Compliant does not specify the time or place of the alleged

8

misrepresentations or by whom they were made. *See Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008). The Court will dismiss Plaintiffs' claim of innocent misrepresentation.

IV.  Count 4 – Silent Fraud

Plaintiffs argue Wells Fargo had a "legal and/or equitable duty to inform Plaintiffs that its mortgage lien securing the Modification Agreement would not be the only encumbrance on Oak Grove[.]" ECF 2, PgID 75. Failure to do it, according to Plaintiffs, constitutes silent fraud. Wells Fargo responds that they have not withheld any information they had a duty to disclose. ECF 6, PgID 132.

To sustain a claim for silent fraud "there must be a legal or equitable duty of disclosure." *United States Fid. & Guar. Co. v. Black*, 412 Mich. 99, 125 (1981). Additionally, "a plaintiff must show some type of representation by words or actions that was false or misleading and was intended to deceive." *Roberts v. Saffell*, 280 Mich. App. 397, 404 (2008), *aff'd*, 483 Mich. 1089 (2009). A duty of disclosure can arise when "inquiries are made by the plaintiff, to which the defendant makes incomplete replies that are truthful in themselves but omit material information." *Hord v. Envtl. Research Inst. of Mich.*, 463 Mich. 399, 412 (2000). A duty may also arise under a fiduciary relationship. A fiduciary relationship "generally does not arise within the lender-borrower context" unless "there is a reposing of faith, confidence, and trust and the placing of reliance by one on the judgment and advice of another." *Farm Credit Servs. of Michigan's Heartland, P.C.A. v. Weldon*, 232 Mich. App. 662, 680 (1998).

Here, Plaintiffs have not established that Wells Fargo breached a duty of disclosure. Plaintiffs claim that the duty arose through the terms of the LMA, arguing, "Defendants acted contrary to their legal contractual duty to conform their behavior to the plain and

9

unambiguous terms of the LMA." ECF 7, PgID 223. They argue that Wells Fargo breached the duty when it "omitted the fact that rescission of the . . . foreclosure would occur." *Id.* at 224. But "Michigan case law expressly provides that an action in tort may not be maintained where a contractual agreement exists, unless a duty, separate and distinct from the contractual obligation, is established." *Sherman v. Sea Ray Boats, Inc.*, 251 Mich. App. 41, 52 (2002). Because the alleged duty stems from the contractual obligation, it cannot provide a basis for the silent fraud claim.

And Plaintiffs have not established another basis for a duty of disclosure. They do not allege they received any incomplete reply to an inquiry about the effect of the LMA, they have not established the special circumstances required to created a fiduciary relationship between borrower and lender, and they have not provided any additional basis for a duty to disclose. For these reasons, the Court will dismiss Plaintiffs' silent-fraud claim.

V.    Count 5 – Slander of Title

To establish a slander of title claim in Michigan, "a plaintiff must show falsity, malice, and special damages, i.e., that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages." *B & B Inv. Grp. v. Gitler*, 229 Mich. App. 1, 8 (Mich. Ct. App. 1998). Put another way, the element requires a claimant to prove the "defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury." *Stanton v. Dachille*, 186 Mich. App. 247, 262 (Mich. Ct. App. 1990).

Here, Plaintiffs have not established the "falsity" element of the claim. A sheriff's sale may be expunged to revive a mortgages like the one here. *See Potter v. Wilmington Sav. Fund*, No. 16-2160, 2017 WL 991072, at *2 (6th Cir. Mar. 14, 2017) ("[A] mortgagee can use an affidavit filed pursuant to Mich. Comp. Laws § 565.451a to both expunge a sheriff's

sale and revive a mortgage, returning two parties to the status quo before a sale."). And Plaintiffs have not shown that the lien reinstated by the expungement of the sheriff's sale is invalid. Plaintiffs' only argument which could be interpreted to suggest that the lien is invalid points to 12 U.S.C. § 1715u, a federal statute that is not applicable to the case. *See* ECF 7, PgID 225. There can be no claim for slander of title when a *valid* lien is filed on a property. Accordingly, the Court will dismiss Plaintiffs' claim for slander of title.

VI.   Count 6 – Reformation of the Loan Modification Agreement

"A court of equity has power to reform the contract to make it conform to the agreement actually made. To obtain reformation, a plaintiff must prove a mutual mistake of fact, or mistake on one side and fraud on the other, by clear and convincing evidence. A unilateral mistake is not sufficient to warrant reformation." *Casey v. Auto Owners Ins. Co.*, 273 Mich. App. 388, 398 (Mich. Ct. App. 2006) (internal citation and quotation marks omitted). "[E]quity will not allow a defense, or grant a reformation or rescission, although one of the parties may have mistaken or misconceived its legal meaning, scope, or effect." *Schmalzriedt v. Titsworth*, 305 Mich. 109, 119 (1943).

Plaintiffs allege their "mistake of fact relative to the number of mortgages that would encumber Oak Grove after closing on the Modification Agreement" is "grounds for reformation of the agreement." ECF 2, PgID 77. But that mistake would be unilateral and not grounds for reformation. Accordingly, that aspect of Plaintiffs' claim must be dismissed.

Plaintiffs also allege mutual mistake. They claim that "[t]he parties entered into a purchase agreement for Oak Grove, but misnamed it 'Modification Agreement.'" ECF 2, PgID 77. They specify that, "the parties were mutually mistaken as to the type of contract necessary to complete the transaction." ECF 7, PgID 226. Interpreted broadly, these

11

statements allege two mutual mistakes: First, that the parties intended to enter into a purchase agreement but mistakenly entered into a loan modification agreement; and second, that the parties were mistaken about their legal ability to enter into a loan modification.

The first allegation does not provide a basis for a mutual mistake claim. The letter from Wells Fargo to Plaintiffs dated July 29, 2011 states "This letter will confirm our conversation where we agreed to a *modification of your mortgage loan*." ECF 4, PgID 89 (emphasis added). The supposedly misnamed Loan Modification Agreement does not mention outright sale of the land, but states that the LMA "amends and supplements" the Wells Fargo mortgage from 2004. *Id.* at 99. Even the "Hardship Letters" written by Plaintiffs do not discuss a sale of the house, but instead ask that "monthly payment be lowered so that we are able to make the payments and stay in our home," and for "support [of] our application for *a loan modification plan* that will help us redeem our home and stay on track with an affordable mortgage."*Id.* at 82–87. Here, the pleadings and attached documents make it clear that the Wells Fargo did not believe it was entering into a purchase agreement; no mutual mistake occurred.

The second allegation, that the parties were mistaken about their legal ability to enter into a loan modification, does not provide a grounds for modification. The basis for the alleged mistake is that at the time the parties executed the LMA, the statutory redemption period had ended, causing title to Oak Grove to vest in Wells Fargo. According to Plaintiffs, because title had vested, Wells Fargo no longer had "legal authority to offer a loan modification . . . [and] the only legal options available to Defendants were to convey Oak Grove to Plaintiffs via a purchase contract or land contract." ECF 7, PgID 226. That

12

argument is incorrect. While it is true that title to Oak Grove vested in Wells Fargo when the redemption period closed, there is no support for the proposition that the subsequent loan modification was illegal. The only authority cited by Plaintiffs is a portion of 12 U.S.C. § 1715u, that states, "upon default or imminent default . . . of any mortgage insured under this subchapter, mortgagees shall engage in loss mitigation actions for the purpose of providing an alternative to foreclosure[.]" The statute is inapplicable here and does not prevent or limit when a lender may offer a loan modification. On the contrary, "Michigan case law demonstrates that a mortgagee can use an affidavit filed pursuant to Mich. Comp. Laws § 565.451a to both expunge a sheriff's sale and revive a mortgage, returning two parties to the status quo before a sale." *Potter v. Wilmington Sav. Fund*, No. 16-2160, 2017 WL 991072, at *2 (6th Cir. Mar. 14, 2017) (emphasis omitted). Accordingly, the parties were not mutually mistaken regarding their legal ability to enter into the LMA.

The Court will dismiss Plaintiffs' claim for reformation of the contract.

**WHEREFORE,** it is hereby **ORDERED** that Defendants' Motion to Dismiss and/or for Summary Judgment [6] is **GRANTED** and the case is **DISMISSED WITH PREJUDICE.**

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: July 19, 2017

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 19, 2017, by electronic and/or ordinary mail.

s/David P. Parker
Case Manager